UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:13-CR-20-GFVT-HAI-6 |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| ROBERT JOE GIBSON, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Court, on referral, considers reported supervised release violations by Defendant Robert Joe Gibson. *See* D.E. 1216. District Judge Van Tatenhove entered a judgment against Defendant on April 24, 2014, following his guilty plea to conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a lesser included offense. D.E. 563. Defendant was originally sentenced to sixty months of imprisonment and a four-year term of supervised release. *Id.* at 2–3.

On October 27, 2017, he was released from the custody of the Bureau of Prisons to begin service of his term of supervision. Within four days, Defendant was arrested on state charges. Based on his actions, including criminal conduct under Kentucky law and his use and possession of a controlled substance, Defendant's term of supervised release was revoked. *See* D.E. 1154. At that time, Defendant was sentenced to twelve months and one day of imprisonment followed by a four-year term of supervised release. *Id.* at 2–3. Defendant began his second term of supervision on September 14, 2018.

I.

On October 23, 2018, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report") charging Defendant with two violations. The USPO then secured a warrant from the undersigned on October 26, 2018. D.E. 1210; D.E. 1211. On October 30, 2018, the USPO issued a Supervised Release Violation Report Addendum ("the Addendum") charging Defendant with an additional violation.

The Report provides the Court with important context concerning Defendant's first two charged violations. According to the Report, Defendant presented himself to the probation office for his initial contact on September 17, 2018, following his release several days earlier from the custody of the Bureau of Prisons. At that time, U.S. Probation Officer Scott Greiwe reviewed Defendant's conditions of release with him in full, provided him with a copy of those conditions, and had him sign a copy of the conditions.

On October 4, Officer Greiwe left a card on the door of Defendant's residence, directing him to report to the probation office on October 9. Defendant failed to appear. On October 12, Officer Greiwe left another card at Defendant's residence, this time directing him to report to the probation office on October 15. Defendant again failed to report as directed. After Defendant did not show up on the second occasion, Officer Greiwe contacted Defendant's mother by telephone; she confirmed that Defendant had received both notices left at his residence and that he had been aware of the appointment times to report to the probation office.

Based on this conduct, the Report alleges that Defendant has violated two conditions of his release. First, the Report alleges that, by failing to report to the probation office on October 9 and 15, Defendant violated the condition that states: "After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must

report to the probation officer, and you must report to the probation officer as instructed." This conduct constitutes a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Second, the Report alleges that, because the USPO did not know of Defendant's whereabouts, he violated the condition that states: "You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observed in plain view." This conduct also constitutes a Grade C violation. *See id.*

The Addendum sheds light on Defendant's actions during the time his location was unknown to the USPO. According to the Addendum, on October 20, 2018, Defendant was arrested and charged with the following crimes under Kentucky law: (1) no registration plates (KRS § 186.170); (2) no registration receipt (KRS § 186.170); (3) failure of owner to maintain required insurance (KRS § 304.39-080); (4) failure to produce insurance card (KRS § 304.39-117); (5) operating on a suspended/revoked operator's license (KRS § 186.620(2)); (6) operating a motor vehicle under the influence of alcohol/drugs with aggravating circumstances (KRS § 189A.010(5B)); (7) possession of drug paraphernalia (KRS § 218A.500(2)); and (8) failure to wear seat belts (KRS § 189.125).[1]

The details of Defendant's arrest are contained in a Kentucky Uniform Citation, which is attached to the Addendum. According to the citation, a Kentucky State Police trooper stopped Defendant's car for cancelled registration plates. Upon approaching Defendant, the trooper observed him to have "slurred thick speech" and "pin point restricted pupils." The trooper had Defendant exit the vehicle and perform the Standardized Field Sobriety Test and the Horizontal Gaze Nystagmus field sobriety test. Both tests showed "validated clues."

---

[1] Defendant's state case is Whitley County District Court case number 18-M-613.

The trooper searched Defendant's person and found a used hypodermic needle in his front right pants pocket, which he told the trooper he had used for methamphetamine. Defendant indicated that he had methamphetamine and marijuana in his system, but he declined a blood test and told the trooper "he would take his charge and just go to jail." Finally, the citation states that Defendant "was operating on DUI suspended status from a 2017 DUI."

The Addendum reports that Defendant's state case was disposed of on October 22, 2018, when he entered pleas of guilty to the charges of: no registration plates; failure of owner to maintain required insurance; operating on a suspended/revoked operator's license; and operating a motor vehicle under the influence of alcohol/drugs with aggravating circumstances. The charges of no registration receipt, failure to produce an insurance card, possession of drug paraphernalia, and failure to wear seat belts were merged with the other charges. This conduct, again, constitutes a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

## II.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on October 31, 2018. D.E. 1214. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on November 8, 2018, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1217. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

4

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release.").  Defendant's stipulation permits the Court to find that he engaged in conduct constituting Grade C violations under the Guidelines.  *See* U.S.S.G. § 7B1.1(a)(3).

During the final hearing, the parties did not make a joint sentencing recommendation regarding the length of a term of imprisonment.  Instead, the government argued for an above-Guidelines sentence of twenty months.  Defense counsel, on the other hand, requested an eleven-month sentence, which is at the top of the Guidelines.  However, both parties submitted that Defendant would benefit from an additional year of supervision following his release from custody.

III.

The Court has reviewed the entire record, including the Report, the Addendum, and their accompanying documents, and Defendant's underlying judgment and sentencing materials.  The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the 18 U.S.C. § 3583(e) analysis.  Through that consideration, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to a twelve-month term of imprisonment followed by two years of supervised release.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  Defendant's conviction pursuant to 21 U.S.C. § 846 for conspiring to manufacture 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine is a Class B felony.  *See* 21 U.S.C.

§§ 841(b)(1)(B), 846. For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted).

Under U.S.S.G. § 7B1.1(a)(3), Defendant's admitted conduct qualifies as a Grade C violation with respect to each of the three violations. Given Defendant's criminal history category of III (the category at the time of his conviction in this District) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is five to eleven months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

The Court's consideration of all the statutory factors informs its recommended sentence of revocation with twelve months of imprisonment followed by two years of supervised release. *See* 18 U.S.C. §§ 3553(a), 3583(e). Likewise, the parties addressed the statutory factors in making their sentencing recommendations to the Court.

First, Defendant's actions underlying his third charged violation places him dangerously close to the conduct underlying his original conviction, which was a massive methamphetamine manufacturing conspiracy. According to the citation attached to the Addendum, Defendant told the officer that he had marijuana and methamphetamine in his system. By continuing to use drugs, Defendant places himself at a great risk of engaging in more serious conduct to feed his addiction.

The Court next considers Defendant's history and characteristics. Here, as the government argued, Defendant has a history of violating court orders and conditions of his supervised release. Indeed, the conduct underlying his first revocation occurred within days of his initial release from BOP custody, and he was again involved in criminal activity within weeks of his most recent release. Perhaps the most troubling aspect of Defendant's record is his complete lack of effort to comply with the terms of his supervision. Notably, in the roughly four weeks he has spent on both terms of his release, Defendant has twice been before the Court for violating his imposed conditions. The Court cannot tolerate such careless behavior.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence, specifically its recommendation of an additional term of supervision. Although there is no maximum amount of supervised release that the Court could reimpose because of Defendant's underlying offense of conviction, see 21 U.S.C. § 841(b)(1)(B), the Court recommends a term of two years, which is a year more than the parties requested. The Defendant's youth, in part, influences the Court's recommendation of a longer term of supervision. Because Defendant is young, the Court hopes that his additional time on supervised release will provide him with the tools he needs to stop committing criminal conduct. If Defendant is unable to curb this behavior, he faces the acute possibility of spending the majority of the rest of his life incarcerated.

The Court must also consider whether a defendant needs any education, training, or treatment, and it is clear from the record that Defendant needs substance-abuse treatment. Defendant told the Court so himself at his final hearing, describing himself as having been an addict since he was 16 years old. However, Defendant was dismissed from the Residential Drug Abuse Program ("RDAP") while previously incarcerated because he tested positive for controlled

substances. The Court cannot offer better treatment than RDAP. Accordingly, although the USPO may assess Defendant for substance-abuse treatment when he is released from custody, the Court declines to recommend any specific treatment at this time.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. Yet, in this case, the Court believes a sentence outside of the advisory Guidelines range is appropriate. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation). Here, Defendant's complete lack of effort to comply with his conditions during both supervision terms provides the Court with such a reason to justify its above-Guidelines recommendation. *Id.*

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant has no record of complying with his conditions of release, and as the government submits, he has been given ample opportunity to demonstrate the Court's trust in him is not misplaced. For example, he received a sentence at the bottom-end of the Guidelines range on his original conviction. Similarly, upon his first revocation, the Court sentenced him to a year and a day of imprisonment in the hopes that Defendant would be incentivized by the chance to earn good-time credit. Through his present

charged violations, Defendant has continued to flout the Court's authority. His behavior is as disrespectful as it is dangerous, and the Court cannot tolerate such a dismissive attitude.

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the violations;

(2) Revocation and imprisonment for a term of twelve months; and

(3) Two years of supervised release under the conditions contained in Defendant's prior revocation judgment (D.E. 1154).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 1217. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

This the 13th day of November, 2018.



**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**